UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                           Case No. 06-10581-DHW
                                                Chapter 13
LEROY DAVIS, JR.,

    Debtor.

MEMORANDUM OPINION

    The debtor filed an objection to Claim No. 14 filed by creditor Betty Y. Davis, former spouse of the debtor. The claim arises from the debtor's obligation under the divorce decree to pay the second mortgage on the marital residence. The debtor objects to the priority status of the claim, contending that the obligation represents a property settlement and not a domestic support obligation.

    The objection came on for evidentiary hearing on February 7, 2007. Both parties testified and presented documentary evidence. Upon consideration of the evidence and arguments of counsel, the court makes the following findings of fact and conclusions of law.

Jurisdiction

    The court's jurisdiction in this matter is derived from 28 U.S.C. §1334 and from the order of the United States District Court for this district referring title 11 matters to the Bankruptcy Court. Further, because this matter involves the allowance or disallowance of a claim, this is a core proceeding under 28 U.S.C. §157(b)(2)(B), and this court's jurisdiction extends to the entry of a final order or judgment.

Findings of Fact

    Betty Davis has lived in her home at 2100 County Road 89, Tuskegee, Alabama for 35 years. She married the debtor Leroy Davis in January 1993,

and her home became their marital residence.

The debtor formed Davis Group Enterprises, LLC and entered into a franchise agreement in May 2003 to operate a Huddle House restaurant. He obtained a $25,000 loan from Alabama Exchange Bank in June 2003 for working capital for the business. The single-pay note matured in one year. The bank took a second mortgage on Betty Davis's home as collateral for the loan. Both the debtor and Betty Davis signed the note and the mortgage.

Betty Davis had no ownership interest in Davis Group Enterprises, LLC.[1] The debtor operated the restaurant on a day-to-day basis. However, Betty helped him part-time for about 6 months both in the restaurant and in the office handling payroll and paying bills. Due to marital problems, the debtor moved out of the home and Betty stopped working at the restaurant in November 2003.

They were divorced on April 8, 2004. The decree entered pursuant to the agreement of the parties. The decree was modified in June 2004, also pursuant to the agreement of the parties. The decree awarded Betty Davis "sole title, possession and use" of the home. The decree requires the debtor to either pay the second mortgage in full or refinance the debt so that the mortgage on Betty Davis's home can be released. Specifically, the decree states:

> It is further ORDERED that the Husband shall be held solely liable for satisfying the second mortgage to Alabama Exchange Bank, secured by the former marital residence, which the Wife owned prior to the marriage, located at 2100 County Road 89, Tuskegee, Macon County, Alabama. It is further ORDERED that the Husband shall either fully satisfy the Alabama Exchange Bank mortgage, since its purpose was to provide

---

[1] She had a 5% ownership interest in the company but released that interest to Leroy Davis at his request upon award of the Huddle House franchise.

working capital for his Huddle House operations, or have said mortgage refinanced so that the former marital residence is removed as security from same, immediately. He is to indemnify the Wife from this debt and any monies that she has to pay to satisfy this second mortgage shall be a judgment in her favor against the Husband, for which she may enforce through any legal means.

The terms and provisions of the decree were solely the result of the agreement of the parties and not any judicial determination. The debtor did not receive any equity in the home.

The second mortgage note became due in June 2004 and was not paid but renewed for an additional six months. When the note became due in December, the debtor did not pay the note. After the note became past due, Betty Davis borrowed money from her retirement account to pay the note and protect her home from foreclosure. She was also paying monthly installments on the first mortgage on her home.

The debtor had no retirement account from which he could borrow to pay the note. In fact, the debtor testified that at the time of the divorce, he had no financial means of complying with its terms. He agreed to the decree solely because he "just wanted it over." The debtor testified that he "didn't have anything to give her" and that "she knew I didn't have it" at the time.

In addition to operating Huddle House, he also operated a truck. Betty Davis had him arrested in July 2005 for failing to comply with the decree. After the debtor produced a copy of his financial statements to her attorney, he was released.

The debtor continued to operate the Huddle House restaurant until January 2006, but it was never profitable. He "walked away" from the business at that time. He had leased both the building and equipment and had nothing to sell. After Betty Davis began to garnish his wages in March

3

2006, the debtor was forced to file this chapter 7 case on June 23, 2006.

Conclusions of Law

A properly filed proof of claim constitutes prima facie evidence of both the validity and amount of the claim. *See* Fed. R. Bankr. Proc. 3001(f). Therefore, the objecting party has the burden of producing evidence sufficient to meet the evidentiary weight accorded to the claim under the Rules. Although there is a shifting burden of proof in a claims contest, the ultimate burden of persuasion rests upon the creditor. *In re Allegheny Int'l, Inc.,* 954 F.2d 167 (3rd Cir. 1992).

11 U.S.C. § 507(a) accords first priority status to domestic support obligations as defined by 11 U.S.C. § 101(14A). A domestic support obligation is defined, in part, as one that is "in the nature of alimony, maintenance, or support . . . without regard to whether such debt is expressly so designated." 11 U.S.C. § 101(14A). The sole issue before the court is whether the debtor's obligation under the decree to pay the second mortgage is in the nature of alimony, maintenance, or support. If so, the claim of Betty Davis is entitled to priority status in this chapter 13 case.[2]

The determination of whether a debt is a support obligation or a property settlement is governed by federal rather than state law. *In re Harrell*, 754 F.2d 902, 905 (11th Cir. 1985). "A debt is in the nature of support or alimony if at the time of its creation the parties intended the obligation to function as support or alimony." *Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir. 2001) (citations omitted).

The court must look to the substance of the obligation rather than to its label or form. *Ackley v. Ackley,* 187 B.R. 24, 26 (N.D. Ga. 1995); *Bedingfield v. Bedingfield (In re Bedingfield)*, 42 B.R. 641, 645 (S.D. Ga. 1983). Nevertheless, state law may aid the court in making this

---

[2] Claims for domestic support obligations are both entitled to priority and excepted from discharge under 11 U.S.C. § 1328(a).

4

determination. *Hughes v. Hughes (In re Hughes)*, 16. B.R. 90, 92 (Bankr. N.D. Ala. 1981).

Courts consider a number of factors in classifying obligations as support or property settlements:

> 1) whether applicable state law would deem the obligation to be alimony or property settlement; 2) whether the obligation ends upon the happening of contingencies, such as remarriage; 3) whether the payments are periodic or lump sum; 4) whether the obligation was constructed to reduce the disparities in the parties' relative earning power; 5) whether the spouse is directly or indirectly benefitted by the payment; and 6) whether the parties have minor children whose support is in question. See In re MacDonald, 194 B.R. 283, 287 (Bankr. N.D. Ga. 1996); In re Snipes, 190 B.R. 450, 452 (Bankr. M.D. Fla. 1995); and Appling v. Rees, 187 B.R. 27, 29 (N.D. Ga. 1995).

*English v. English (In re English)*, 99-13129-WSS, (Bankr. S.D. Ala. July, 2001).

Although not controlling, Alabama law recognizes two types of divorce obligations to a former spouse and denominates them as periodic alimony and alimony in gross. Periodic alimony is for the support and maintenance of the former spouse and is characterized as terminable upon the remarriage or cohabitation of the former spouse. *See Ala. Code*, § 30-2-55 (1975). Periodic alimony is further characterized as modifiable. Alimony in gross, on the other hand, is a property settlement and is nonmodifiable and fixed as to the amount and time of repayments. *Delaine v. Delaine (In re Delaine)*, 56 B.R. 460, 466 (Bankr. N.D. Ala. 1985).

5

Turning now to apply the applicable factors to the debtor's obligation arising from the divorce at bar, the court concludes as follows.

The divorce decree does not denominate the obligation to pay the second mortgage as either alimony or property settlement. In fact, the divorce decree does not denominate any of the obligations as either alimony or property settlement – no such labels are contained in the decree. Further, there is no indication whether this obligation is modifiable or terminable. However, the obligation is fixed as to the amount and is not periodic. These two factors are consistent with a property settlement obligation.

The obligation was not constructed to reduce the disparities in the parties' relative earning power. If so, the payment would have been constructed to flow in the opposite direction – to the debtor. The evidence indicates that the earning power of Betty Davis has surpassed the earning power of Leroy Davis during all time periods relevant to this proceeding. Betty Davis may or may not have been aware of the extent of the disparity. The debtor testified that at the time of the divorce decree, Betty Davis knew that he was financially unable to comply. The debtor's financial situation has not improved since before filing bankruptcy.

Betty Davis would have received an indirect benefit from the debtor's payment of this money. The decree required the debtor to pay the money to the bank and not to Betty Davis. However, the payment would have reduced her obligation to Alabama Exchange Bank dollar for dollar.

The final factor relates to whether the parties have minor children whose support is in question. The parties have no minor children.

Upon consideration of these factors, the court concludes that they point toward the classification of this obligation as property settlement. However, though the factors are relevant, "the touchstone" for determining the nature of the obligation is the "intent of the parties." *Cummings*, 244 F.2d at 1266. "In determining whether a particular obligation is in the

6

Case 06-10581    Doc 51    Filed 03/16/07    Entered 03/16/07 08:10:56    Desc Main
Document      Page 6 of 7

nature of support, '[a]ll evidence, direct or circumstantial, which tends to illuminate the parties subjective intent is relevant.'" *Id.*

The language of the decree very clearly states the reason for the imposition of this obligation on the debtor. The decree makes the debtor liable for the second mortgage debt "since its purpose was to provide working capital for his Huddle House operations." Ex. P-1, ¶ 8. Therefore, the debtor was assigned full responsibility for this debt not to provide support for Betty Davis but to require him to repay that which was borrowed for his benefit.

The debtor testified regarding his subjective intent: he did not have the financial ability to comply with the decree when it entered. He further testified that Betty Davis knew of his inability. He agreed to the terms just to "get it over with," hoping that somehow he could pay. Betty Davis, however, testified that she had no knowledge of the Huddle House finances at the time of the divorce.

CONCLUSION

Considering all of the evidence, the court concludes that the obligation of the debtor to pay Betty Davis the second mortgage on her home was not intended by the parties to provide support for Betty Davis. Therefore, her claim for this amount is not entitled to priority in this chapter 13 case. An order consistent with this memorandum opinion will enter separately.

Done this 15th day of March, 2007.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: C. H. Espy, Jr., Attorney for Betty Davis
   Donna C. Crooks, Attorney for Debtor